**In re Joseph J. BIRKENSTOCK and Generose M. Birkenstock, Debtors.**

**UNITED STATES of America, Plaintiff,**

v.

**Joseph J. BIRKENSTOCK and Generose M. Birkenstock, Defendants.**

**Bankruptcy No. 90–06351–DEI.**
**Adv. No. 91–2054.**

United States Bankruptcy Court, E.D. Wisconsin.

Sept. 12, 1994.

Raymond R. Mulera, Washington, DC, for U.S.

Joseph W. Weigel, Milwaukee, WI, for defendants.

## DECISION

DALE E. IHLENFELDT, Bankruptcy Judge.

In this adversary proceeding, the plaintiff, United States of America, has asked the court to deny the debtors, Joseph J. Birkenstock and Generose M. Birkenstock, a discharge pursuant to 11 U.S.C. § 727(a)(4) and to rule that its tax claim against. the defendant debtors is nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C). The court has jurisdiction under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and § 157(b)(2)(J).

Regarding its objection to discharge, the plaintiff contends that the debtors made false oaths in that they failed to list in their bankruptcy schedules certain trusts or trust property as property of the estate. As to the nondischargeability of its tax claim, the plaintiff contends that the debtors "willfully attempted in any manner to evade or defeat such tax." Trial was held on August 22, 1994.

One or both of the defendants have been involved in prior court proceedings having to do with the filing of tax returns or the assessment and payment of taxes. Much of the evidence in this case is derived from this past litigation between the parties, which includes the following decisions:

1. *Joseph J. Birkenstock and Generose M. Birkenstock v. Commissioner,* 1979 PH TC Memo ¶ 79,201, 1979 WL 3266.

2. *Joseph J. Birkenstock and Generose M. Birkenstock v. Commissioner,* 646 F.2d 1185 (7th Cir.1981)

3. *Joseph J. Birkenstock and Generose M. Birkenstock v. Commissioner,* T.C. Memo, 1983–715, 47 T.C.M. 491–493, 1983 WL 14702.

4. *U.S. v. Joseph J. Birkenstock,* Case No. 86–CR–40, 1990 WL 71383 (E.D.Wis. 4/17/90) Honorable Aaron E. Goodstein, U.S. Magistrate Judge

Joseph Birkenstock (Birkenstock) received a degree in mechanical engineering from the University of Michigan in 1938. In 1950, he and others created Formrite Tube Company. He directed the day-to-day functions of that company, including sales, manufacturing and finance, and was president of Formrite from the time it was organized in 1950 until 1988.

Mr. and Mrs. Birkenstock were married in 1943. Since the time they were married, they have always filed joint federal income tax returns. They live at 1011 River Court in Manitowoc, Wisconsin.

### The 1974 Income Tax Return

On their 1974 federal income tax return, the debtors showed receipt of $35,184.82 in

paper dollars or Federal Reserve Notes, which they referred to as Pseudo Dollars. By using a formula that supposedly reflected the actual value of gold represented by the American dollar, they reduced this figure to $9,316.42 for purposes of computing their federal income tax liability. The Internal Revenue Service (IRS) determined that their method of computing their 1974 income based on its "gold value" was improper and issued a statutory notice of deficiency, pursuant to 26 U.S.C. Section 6212, in the amount of $8,220.60. This represented the additional tax that was due based upon their actual income as opposed to the tax they reported as owing based upon the "gold value" of their income.

On May 21, 1979, the United States Tax Court rejected the Birkenstocks' contention regarding their 1974 income taxes, ruled that the Birkenstocks "must pay their taxes," and upheld the 1974 income tax deficiency determination by the IRS. The Birkenstocks appealed the decision of the Tax Court and on March 16, 1981, the U.S. Court of Appeals for the Seventh Circuit affirmed, stating, "Our research confirms the Commissioner's contention that this case is but one 'in a seemingly endless series of tax cases challenging the federal monetary system.'"

### The Joseph Birkenstock Equity Trust

On November 26, 1975, at a time when their 1974 tax liability was being litigated and had not been paid, the Birkenstocks conveyed all of their property to the "Joseph Birkenstock Equity Trust."[1] This included their residence, which was subject to a mortgage, and Birkenstock's stock in Formrite Tube Company, together with other property. At the time of the transfer to the trust, Birkenstock was the president of Formrite and owned approximately 500 shares of Formrite stock.

In addition to the real and personal property, Birkenstock also transferred his lifetime income to the trust. Paragraph 4A of the trust describes this as follows:

> The Exclusive use of his lifetime services including ALL of his earned remuneration accruing therefrom, from ANY current source whatsoever in exchange for all of the beneficial interest of THIS TRUST so that he can maximize his lifetime efforts through the utilization of all of his Constitutional Rights in the pursuit of happiness and his desire to promote the general welfare all of which JOSEPH J. BIRKENSTOCK feels he will achieve because this act is in accordance with his RELIGIOUS BELIEFS.

The first trustees of the trust were Generose Birkenstock and their son, Karl Birkenstock. Birkenstock was added later as an additional trustee. Initially, Mr. and Mrs. Birkenstock retained a ⅗th's beneficial interest in the trust, but this was subsequently transferred to their children, and as of February 15, 1981, they no longer had any interest in the trust.

The Birkenstocks did not receive any money or any other property for the transfer of property to the Joseph Birkenstock Equity Trust. Following the transfer to the trust, the Birkenstocks continued to live in the home on River Court and paid no rent for the property.[2]

On May 30, 1980, the Joseph Birkenstock Equity Trust created the Garden Investments Trust and on January 31, 1981, Mr. and Mrs. Birkenstock issued a "Restatement" of the Joseph Birkenstock Equity

---

1. In May 1975, the debtors had transferred some assets to their children, including their home on River Court, reserving to themselves a life estate. Birkenstock was 60 years old at the time. He testified this was done as part of an estate plan and because he was in ill health, and that they subsequently decided a family trust would be a better method of estate planning. The children later transferred the property back to the debtors, and on November 26, 1975, the debtors transferred all of the property to the Joseph Birkenstock Equity Trust.

2. The court need not and does not decide the questions of whether the trust is a sham or the alter ego of the debtors and whether the transfer of property to the trust can be attacked or set aside. The parties are in sharp disagreement regarding the answers to these questions, but they are not necessary for a decision on the issues raised in this proceeding.

Trust which they allege was an effort to clarify the original trust.

In reporting their income in their 1975 tax return, Mr. and Mrs. Birkenstock deducted the costs of setting up the trust. In 1983, after the IRS determined deficiencies in their 1975 through 1979 income tax liability, they petitioned the U.S. Tax Court for a hearing. The court declared in its decision,

> Petitioners have conceded that the income reported by the Joseph Birkenstock Equity Trust is taxable to petitioners in the taxable years here involved. The remaining issues for decision are: (1) Whether petitioners were entitled to a deduction in 1975 under section 212 for the cost of materials used to establish a family trust; and (2) whether any part of petitioners' underpayment of tax for each of the years 1975 through 1979 was due to negligence or intentional disregard of the rules and regulations.

> \* \* \* \* \* \*

> Petitioner stresses the fact that the assets transferred to the trust included some income-producing properties. However, it readily appears from the record that petitioner received only generalized instructions on how to transfer his assets to the trust and preprinted forms for making such transfers. There is no persuasive evidence to show that such guidance and advice were in any way related to the management or conservation of such property. •

> \* \* \* \* \* \*

> Good faith reliance upon competent counsel may in some circumstances negate a charge of negligence. Here, however, we are not persuaded that petitioner's reliance upon the various individuals involved in setting up his trust was in good faith. Petitioner is an astute business executive. The individuals he purportedly relied upon to a large extent in setting up the trust were neither attorneys nor accountants. Furthermore, it is evident from petitioner's testimony that he was fully aware of the legal challenges to the viability of family trusts. We are persuaded that petitioner's actions under the circumstances portrayed in this record constituted negligence or intentional disregard of the law. Respondent is therefore sustained on this issue.

In its discretion and under applicable tax law, the tax court could have imposed a five percent penalty for negligence or a 25 percent penalty for fraud. In fact, it imposed the five percent penalty.

### Failure to File Income Tax Returns for the Years, 1980 through 1983

On July 31, 1986, a jury found Birkenstock guilty on four counts of failing to file income tax returns for 1980 through 1983, in violation of 26 U.S.C. § 7203. The court sentenced him to a six-month period of incarceration pursuant to a work release program, payment of a $30,000 fine and three years' probation.[3]

The government filed a petition seeking revocation of Birkenstock's probation on the ground that he had failed to make any payments toward the fine. Following a hearing on January 25, 1990, U.S. Magistrate Judge Aaron E. Goodstein revoked Birkenstock's probation. Judge Goodstein found that Birkenstock had the ability to pay at least some portion of the fine and had failed to pay any of it.

### Debtors' Income and Use of Personal Funds

Birkenstock personally guaranteed the various loans covering the trust properties, and since he is obligated to include the trust income on his tax return, he is entitled to deduct payments that he makes for expenses relating to properties owned by the trust. He has continued to use personal funds to pay trust expenses. For example, utility charges for trust property are billed to Birkenstock and are paid by him personally. The address of the trust is the Birkenstocks' home address on River Court.

---

**3.** Birkenstock says his conviction was for failure to "timely file" returns because of the fact that he actually filed the returns.

Although he had conveyed all of his income to the trust, Birkenstock remained on the Formrite payroll and continued to receive income from Formrite. He contended that he received his last "paycheck" from Formrite in 1983, but acknowledged that since that time he has received monetary "advances" from the company, which are then "zeroed out" when he receives the company's paychecks. Notwithstanding Birkenstock's characterization of these payments from Formrite, the company for tax purposes classifies the payments as earnings, issues him a W–2 statement, and his tax return lists them as wages.

In addition, Birkenstock continued to receive $300 a month as director's fees until August, 1988. In August, 1987, he began receiving monthly social security payments. His social security was reduced to about $325 a month because of levies by the IRS. It would have been about $1,300 a month if not for the government levy.

In 1987 Birkenstock received some $137,-925 from Formrite, including around $44,000 as a result of the cashout of Birkenstock's retirement fund with the company. Part of this amount was levied upon by the IRS, and part went to pay his fine and court costs, so that he actually received $19,000. He did not use any of this money to pay back income taxes, but instead used it to pay real estate taxes or mortgage payments on property held by the trust.

Generose Birkenstock received Social Security income of $3,900 in 1988 and $3,444 in 1989 and had her own checking account, and she knew that her husband was convicted of failing to file income tax returns, but she herself never attempted to file the returns and never considered using her own money to make even a partial payment on any of the taxes. She testified that she didn't consider it to be her responsibility to pay the taxes.

The debtors' taxes were overpaid by some $67,000 or $68,000 during the period from 1980 to 1989 by reason of tax withholding. The IRS applied the overpayment to their tax deficiencies for 1975 through 1977. Neither Mr. or Mrs. Birkenstock ever voluntarily wrote a check for those years.

*The Bankruptcy Case*

On November 27, 1990, Mr. and Mrs. Birkenstock filed their chapter 7 bankruptcy petition and schedules. They did not include any mention of the trust or trust property in their schedules. However, on January 31, 1991, the debtors' attorney sent the trustee a copy of the three trust instruments along with a three page letter describing the trusts in detail.[4]

Apart from attorney's fees owed to Mr. Weigel, only two creditors are listed in the schedules—the United States of America and the State of Wisconsin. The schedules list income tax liability of $192,803.88 owing to the United States and $25,863.84 owing to the State of Wisconsin. The United States "through its agency, the Internal Revenue Service," entered an appearance in the case on February 22, 1991, and on the same day filed a proof of claim for income taxes of $228,891.80. Of this amount, $159,419.80 is for 1977, 1978 and 1979 income taxes that were assessed in 1978, 1979 and 1980 and $69,472.00 for 1980 to 1983 taxes assessed in 1990.

In an order mailed to creditors on November 29, 1990, the court fixed March 4, 1991 as the deadline for filing objections to discharge. The United States received notice of the filing and timely filed this adversary proceeding on March 1, 1991.

*The § 727(a)(4) Objection to Discharge*

Section 727(a)(4) provides that a debtor who "knowingly and fraudulently" makes a

4. On March 5, 1991, the chapter 7 bankruptcy trustee filed a "no asset" report. Thereafter, by letter to the court dated October 29, 1993, he noted that the case was still open, and that the government had filed an adversary proceeding against the debtors that "may make certain assets available". After the adversary proceeding had "run its course", the trustee said that he

might withdraw his no asset report, or, alternatively, if it appeared "that there are actually no assets available", he would allow the report to stand.

The trustee is of course mistaken. This adversary proceeding is concerned with objections to discharge and dischargeability and not to the recovery of assets.

false oath in or in connection with a case may be denied a discharge. "A common instance of 'false oath' is when a debtor declares that the schedule of property is 'true and correct' and it appears that he or she has knowingly and fraudulently omitted assets therefrom." 3 *Collier on Bankruptcy* ¶ 727.04[1A], page 727–60 (15th ed.).

■ One of the things an objecting creditor must prove, in order to obtain a denial of a debtor's discharge under § 727(a)(4), is an intent on the part of the debtor to deceive or defraud creditors. Intent to deceive or defraud is a necessary element of the offense. *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir.1992); *In re Bailey*, 145 B.R. 919, 926 (Bankr.N.D.IL.1992); *In re Arcuri*, 116 B.R. 873, 880 (Bankr.S.D.N.Y. 1990). A reckless and cavalier disregard for the truth may be sufficient to warrant denial of discharge. *In re Bailey*, 147 B.R. 157 (Bankr.N.D.IL.1992).

■ The issue in the case at bar, regarding intent to deceive or defraud, is not whether the debtors intended to deceive or defraud creditors when they created the trust and transferred property to the trust, a subject of sharp dispute between the parties. The issue in this case is whether or not they intended to deceive or defraud creditors when they omitted in their bankruptcy schedules any mention of the trust and trust property.

The trust and trust property have been a subject of argument and litigation between the debtors and the IRS for 14 or 15 years. Clearly, the IRS was aware of the trust long before the debtors filed bankruptcy. Although the trust was not listed in the debtors' schedules, the trustee in bankruptcy also knew about it. On or about January 31, 1991, the trustee had received copies of the trust instruments from the debtors' attorney along with a three page letter describing them. With this information in hand, the trustee signed off on the trust property by filing a no asset report on March 5, 1991.

Whether or not the debtors have ownership rights to the trust income and assets (still a subject of dispute between the parties) such that they should have included them in their schedules, it is clear that their failure to list them in their schedules could not have been intended to mislead anyone and could not have misled anyone, much less the IRS or the trustee.

There is no evidence of any intent to deceive or defraud creditors, on the part of the debtors, by reason of their failure to list the trusts or trust property in their schedules. An order will be entered directing that a bankruptcy discharge be issued to the debtors, Joseph J. Birkenstock and Generose N. Birkenstock.

*Dischargeability of the I.R.S. Tax Claim*

■ Section 523(a)(1)(C) excepts from discharge a tax "with respect to which the debtor ... willfully attempted in any manner to evade or defeat such tax". The phrase "willfully attempted to evade" as used in § 523(a)(1)(C) was examined by the courts in the *Toti* case. For the years 1974 through 1981, Toti did not file federal income tax returns or pay federal income taxes, despite the fact he knew he was liable for the taxes and he had the wherewithal to pay his taxes during some of those years at least.

The bankruptcy court ruled that Toti's failure to file a return and make a payment was merely an omission which did not fall within the willfulness standard, that in order to constitute a willful attempt to evade a tax under § 523(a)(1)(C), the debtor must have engaged in some type of affirmative action, some type of commission, and that an omission was insufficient to constitute a willful attempt to evade or defeat. *In re Toti*, 141 B.R. 126, 130 (Bankr.E.D.MI.1992).

That ruling was reversed by the district court. *U.S. v. Toti*, 149 B.R. 829 (E.D.MI. 1993). The district court concluded that the bankruptcy court had applied the wrong legal standard. The court said (p. 834)

"the proper definition of 'willfully attempted to evade' in the context of an 11 U.S.C. 523(a)(1)(C) discharge case is that found in other civil tax cases—voluntary, conscious and intentional. There is no requirement of an affirmative act or commission as suggested by Toti. As [*In re*] *Jones* [116 B.R. 810 (Bankr.Kan.1990) ] and *Domanus*

[v. U.S.] [961 F.2d 1323 (7th Cir.1992)] indicate, the purpose of the Bankruptcy Code is to allow the honest debtor a fresh start. One who fails to file tax returns and pay his income tax liability when financially able to meet those obligations hardly qualifies as an honest debtor.

\*     \*     \*     \*     \*     \*

Toti's failure to file and pay was done with knowledge of a duty under the law to file and pay his taxes and was voluntary, conscious and intentional. Accordingly, Toti willfully attempted to evade or defeat his tax liability as defined in 11 U.S.C. § 523(a)(1)(C)."

The decision of the district court was affirmed by the U.S. Court of Appeals for the Sixth Circuit. That court said (quoting the district court), " '(Toti) had the wherewithal to file his return and pay his taxes, but he did not fulfill his obligation. It is undisputed that he did so voluntarily, consciously, and intentionally.' We agree with the district court's holding that Toti willfully attempted to evade or defeat his tax liability within the meaning of § 523(a)(1)(C) and that his debt was not discharged by his bankruptcy." *In re Toti,* 24 F.3d 806, 809 (6th Cir.1994). See also *In re Dube,* 169 B.R. 886 (Bankr.N.D.Il. 1994).

Beginning with the debtors' 1974 "gold value" income tax return, followed by repeated notices of deficiencies over the years, and up to and including the filing of this bankruptcy, the record in this case reveals a continuing and unrelenting effort by the debtors to evade or defeat federal income taxes within the meaning of § 523(a)(1)(C). From such sources as withholding by Formrite and levies on social security payments by IRS, funds have been received by the government and applied to the debtors' tax liabilities for tax years dating back to 1980. There is no evidence, however, of even one single voluntary payment by either debtor on their income taxes for those years.

█ Considering all of the facts and circumstances of this case, the court does not believe it to be inequitable to hold Generose Birkenstock responsible along with her husband. She signed their joint returns. She

had to have knowledge of their failure to file returns and their failure to pay taxes. Mr. and Mrs. Birkenstock had the wherewithal to file their returns and pay their taxes, and they failed to fulfill their obligation to do so. They did this voluntarily, consciously and intentionally. The court finds that the debtors willfully attempted to evade their tax obligations in violation of § 523(a)(1)(C) and accordingly that their tax liabilities to the plaintiff United States of America, are nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C).

## ORDER

In this adversary proceeding, the plaintiff, United States of America, has asked the court to deny the debtors a discharge pursuant to 11 U.S.C. § 727(a)(4) and to rule that its tax claim against the defendant debtors is nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C). The court has jurisdiction under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and § 157(b)(2)(J).

The court has this date filed its Findings of Fact and Conclusions of Law and a written decision. In accordance with the court's Findings and Conclusions and written decision,

IT IS ORDERED that a bankruptcy discharge be issued for the debtors, Joseph J. Birkenstock and Generose N. Birkenstock.

IT IS FURTHER ORDERED, pursuant to 11 U.S.C. § 523(a)(1)(C), that the debtors' tax liability to the plaintiff United States of America, is nondischargeable.