In re Richard J. GRASSGREEN, Debtor.

Richard J. GRASSGREEN, Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 93–640–BKC–3P1.
Adv. No. 94–117.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Jan. 11, 1995.

David Otero, Jacksonville, FL, for plaintiff.

Bruce Russell, Washington, DC, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon Complaint to Determine Tax Related Liability, Dischargeability, Equitably Subordinate Penalties and for Turnover of

Property. Plaintiff and defendant have stipulated to dismissal of all the counts that do not relate to dischargeability under 11 U.S.C. § 523(a)(1)[1]. Plaintiff, Richard J. Grassgreen filed this motion for summary judgment against defendant, United States of America for its Internal Revenue Service pursuant to Federal Rule of Bankruptcy Procedure 7056 on all remaining counts. The Court held a hearing on the motion for summary judgment on December 13, 1994. After considering (a) defendant's Answer to the Dischargeability Complaint, (b) the Court's order sustaining in part and overruling in part objections of debtor and Enstar, Inc. to Claims 7 and 28 of the United States of America Internal Revenue Service dated September 26, 1994, 172 B.R. 383 ("order"), and the findings of fact and conclusions of law entered in connection with the order dated September 26, 1994 ("findings and conclusions"), (c) the affidavit of Richard J. Grassgreen dated November 30, 1994, filed by plaintiff in support of his motion for summary judgment (the "affidavit"), and (d) the transcript of the deposition of Richard J. Grassgreen taken by defendant on December 6, 1994, and filed by defendant in opposition to the motion for summary judgment (the "Deposition"), the Court finds that there is no issue of material fact and will grant plaintiff's motion for summary judgment.

## FINDINGS OF FACT

Plaintiff is the debtor in this Chapter 11 bankruptcy case. Defendant filed two claims, 7 and 28 which raise several issues, among them whether plaintiff filed fraudulent income tax returns for tax years 1985, 1986, and 1987. Plaintiff objected to the claims and the Court held an evidentiary hearing on the objections on May 19, 1994 (the "claims hearing"). After receiving post-hearing briefs from the parties, the Court entered the order and the findings and conclusions. The order was appealed by both plaintiff and defendant, but the appeals were

subsequently voluntarily dismissed with prejudice. In the order and findings and conclusions, the Court fully and finally determined facts relevant to the motion for summary judgment. Accordingly, the following facts contained in the findings and conclusions are the law of the case and are undisputed in this proceeding:

> From 1969 through October 1990, debtor was an officer and director of Enstar Group, Inc., and its predecessor corporations including Kinder–Care Learning Centers, Inc. Debtor received a law degree from the University of Iowa and was employed by the IRS as a trial attorney prior to his affiliation with Kinder–Care.

> From 1984 until April 1987, debtor was responsible for the day-to-day management of Enstar's investment portfolio. During that period, Enstar invested in high-yield corporate debt securities or "junk bonds" and preferred stock issues. As the officer responsible for Enstar's investment portfolio, debtor made commitments through Drexel Burnham Lambert, Inc., to purchase securities to fund take-over bids by companies unrelated to Enstar. Drexel Burnham Lambert paid a fee equal to a percentage of the funds committed.

> In 1984, debtor and Perry Mendel, president and CEO of Kinder–Care, entered into a partnership for personal investments. The partnership, Megra partners, had two bank accounts, one with Drexel Burnham Lambert in California and one with Central Bank in Alabama. The Drexel Burnham Lambert account used Kinder Care's taxpayer identification number and was held in the name of Megra. Debtor does not know which taxpayer identification number was used for the Central Bank account. Debtor received monthly statements for these two accounts.

> Megra purchased six million dollars of Coastal Corporation debt security and

1. On November 17, 1994, the parties filed a joint stipulation of dismissal of counts I, II, III, IV, V, VI, VII, XV, and XVI because they were rendered moot by the Court's order dated September 26, 1994. Thus, the remaining counts are VIII, IX, X, XI, XII, XIII and XIV.

Enstar purchased four million dollars to fund Coastal Corporation's takeover bid for American Natural Resources. Megra secured the loan received from Central Bank to fund its purchase with a six million dollar Coastal Corporation bond. The bond was held by Central Bank. The partnership retained the entire commitment fee from the Coastal Corporation financing. In addition to the commitment fee from the Coastal Corporation transaction, the partnership retained other commitment fees due Enstar.

Debtor had a CPA from the tax department at Enstar prepare his tax returns for 1985, 1986 and 1987, although no one signed the returns in the space provided for a preparer. Debtor testified that he turned all tax records over to the CPA and did not analyze the information himself. Debtor included the income received from the many other partnerships in which he had an interest on his returns for the years at issue.

Debtor received a 1099 from Drexel Burnham Lambert for the interest accrued on the commitment fees but not for the principal amount on the fees. The interest reflected on the 1099s was included in the income debtor reported on his tax returns. The reason the fees were not included in the debtor's income was because the principal amount of the fees were not included in the 1099s he received. Debtor did not receive a 1099 for the interest received on the six million dollar Coastal Corporation bond for 1986 or 1987. Debtor did not take a deduction for interest expense on the loan to finance the Coastal Corporation commitment.

Debtor entered into a cooperation and plea agreement with the United States Attorney for the Southern District of New York in which debtor pled guilty to two counts of securities fraud based upon the retention of Kinder–Care's commitment fees. Debtor advised the United States Attorney that the commitment fees had not been included in his 1985 income tax return. The cooperation agreement required debt-or to file amended tax returns for 1985, 1986 and 1987. The agreement states in part:

> It is further understood that prior to the date of sentencing Richard Grassgreen shall file accurate amended tax returns for the years 1985–90, and will pay, or will enter into an agreement to pay, past taxes due and owing by him to the Internal Revenue Service, including applicable penalties, if any on such terms and conditions as will be agreed upon between Richard Grassgreen and the Internal Revenue Service.

Based upon the amended returns, debtor owed an additional tax of $170,007.00 for 1985, an additional tax of $99,565.00 for 1986, and an additional tax of $78,851.00 for 1987. Debtor paid $90,008.00 on the 1985 liability claiming an offset of $79,999.00 for a refund due. Debtor paid $61,622.00 on the 1986 liability claiming an offset of a $37,943.00 refund and paid $78,851.00 on the 1987 liability. Debtor has not paid interest or penalties for any of these years.

The IRS audited debtor's 1985 return in 1986 and assessed additional tax on June 27, 1988. Debtor paid the additional tax in the amount of $5,176.00 and interest of $1,315.24 and the file was closed. After receiving information from the United States Attorney for the Southern District of New York, the IRS reopened the investigation of the 1985 tax return.

The IRS filed claim 7 on August 30, 1990, in the amount of $670,637.82. On October 7, 1993, the IRS filed an amended claim, claim 28 in the amount of $512,152.82.

The claim is as follows:

| Tax Year | Assessment | Tax Due | Interest |
|----------|-----------|---------|----------|
| 12–31–85 | 12–23–91 | 0 | 142,475.31 |
| 12–31–86 | 1–27–92 | 47,613.00 | 80,290.03 |
| 12–31–87 | 1–27–92 | 0 | 38,271.48 |

Penalty: 196,280.00

Testimony at the hearing indicates that $4,761.00 of the penalty figure is penalty for failure to pay tax for 1986 and $47.88 is for failure to pay in 1987. The remainder

of the penalty included in the claim is attributable to fraud and understatement penalties from the 1985 return. The IRS sent debtor a notice of deficiency on July 28, 1993, which informed debtor of this 1985 penalty for fraud pursuant to 26 U.S.C. § 6653(b) and substantial understatement pursuant to 26 U.S.C. § 6111.

The interest included in claim 28 for 1985 was manually assessed on December 23, 1991, and was manually assessed on January 27, 1992, for 1986 and 1987. The $47,613.00 amount is a refund originally claimed by debtor which was disallowed by the IRS. The claim is secured by a 1992 refund due debtor in the amount of $7,223.00. The remainder of the claim is unsecured.

In addition, plaintiff relies on the affidavit filed in support of his motion for summary judgment. Defendant did not object to the form or content of the affidavit, nor did it file an affidavit rebutting any of the statements contained in plaintiff's affidavit. Instead, defendant relies exclusively on plaintiff's deposition. However, the deposition does not contradict the affidavit, thus there is no material dispute regarding the facts contained in the affidavit.[2] The affidavit states in pertinent part:

2. Helaine Grassgreen and I purchased our current residence in Jacksonville, Florida in November 1991. The down payment for our home was made from our joint bank account in Alabama. The primary reasons we moved to Florida are (a) extensive negative publicity in Alabama, (b) my wife is originally from Florida, (c) my wife's family lives here and are life long residents, and (d) my mother is at River Garden Nursing Home in Jacksonville, Florida. At the time we moved to Florida and through the present date Helaine Grassgreen and I intended and currently intend to permanently reside in Florida.

3. There were no court judgments entered against me until Enstar received a judgment in February 1993. With the exception of the Enstar lawsuit, there were no judgments pending or threatened against me until after 1990. I did not anticipate a judgment being entered against me in the Enstar lawsuit. Even if a judgment was entered against me in the Enstar litigation, I did not anticipate that I would have to pay an amount that would exhaust my financial resources to Enstar since my attorneys advised me that any liability up to $4,500,000 would be offset by Mr. Mendel's $4,500,000 settlement in the same case and I had a significant counterclaim for retirement benefits.

4. As of late 1991, I believed that I had paid all I owed to the United States Government through the return of all commitment fees and through payments to the IRS on October 23, 1991. On October 23, 1991, Alan Rothfeder and I met with Charles Flowers, an IRS revenue agent, and delivered amended tax returns and checks in full payment of all taxes due for 1985–1987. Mr. Rothfeder indicated at that meeting (orally and in writing) that no further amounts were due to the IRS. Mr. Flowers accepted payment of all such taxes at that meeting. After the meeting with Mr. Flowers, I received a series of computer generated notices from the Memphis Service Center of the IRS regarding additional taxes and interest for 1985–1987. In response to these notices, I contacted Mr. Hutto and Mr. Flowers (both of the IRS) and was advised that 'everything would be taken care of.' After being advised that 'everything would be taken care of,' I did not receive further notices from the Internal Revenue Service. Accordingly, based upon the representations of the IRS and the advice of my attorney, I believed that I had paid all amounts which were due and owing to the IRS. I did not receive another notice from the IRS until after I filed my bankruptcy petition.

Grassgreen's belief as to the existence of the agreement is not material to the determination in this proceeding.

---

2. In the findings and conclusions, the Court specifically held that there was no agreement between the defendant and plaintiff regarding payment of the 1985, 1986 and 1987 taxes. Mr.

5. Each year from 1985 through the present, I have kept all records I received relating to my taxes and provided them to my tax return preparer and, in connection with the filing of my Form 1040X amended tax returns for 1985–1987, I provided all relevant records to my attorney Alan Rothfeder to be turned over to the IRS.

6. I filed all federal income tax returns for the tax years 1985–1993 (and for all prior years of his adult life) on a timely basis.

7. I have never concealed assets. I left all commitment fees received in 1985 in the Megra account at Drexel Burnham Lambert until the account was closed. I did not move the interest earned on the Coastal bond out of the account into which the interest was deposited until the account was closed.

8. I have made all of my records available to the United States (including the IRS). I voluntarily came forward and notified the IRS that I owed taxes. I also cooperated fully with IRS Agents Hutto and Flowers. The U.S. Attorney stated in writing that I voluntarily cooperated with the United States and fulfilled all my obligations of the plea agreement (including paying all taxes owed from 1985 through 1989).

9. During all relevant periods I never dealt in cash. All of my transactions have been performed in a traceable fashion (by check or wire transfer).

10. Due to my plea agreement and undetermined period of incarceration in October 1990, I decided to place all my brokerage assets (which were previously in my name individually) into a joint account with my wife. The sole reason for this transfer of assets was to enable my wife to have access to our financial resources during the period of incarceration. I did not have the intent to defraud any creditors since I did not have any current and threatened creditors at that time. After these transfers, it was my intent to pay all of my individual obligations out of our joint accounts. This intent was reflected by full payment of all amounts which I believed I owed to the IRS (relating to tax liability for 1985–1987) and to Enstar (relating to the return of commitment fees). The joint account was then fully exhausted to pay my individual legal fees, living expenses and to make a partial down payment on our residence.

11. The only asset transfers I have made during this period are transfers of brokerage and money market accounts in October of 1990 from me (individually) to my wife and I (jointly). Other than transfers from me individually to my wife and I jointly (described in paragraph 10 and which were fully exhausted for my individual benefit and living expenses), I have never transferred any assets to Helaine Grassgreen individually or to any third party during this period.

## CONCLUSIONS OF LAW

### A. Summary Judgment Standard

Pursuant to Federal Rule of Bankruptcy Procedure 7056, plaintiff seeks entry of summary judgment with respect to the remaining counts of the complaint. Rule 7056 incorporates Federal Rule of Civil Procedure 56, and provides that summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

This Court recently recited the standard for considering motion for summary judgment in *In re Macks,* 167 B.R. 254, 256 (Bankr.M.D.Fla.1994). In *Macks,* the Court stated:

This standard has been interpreted by the Supreme Court to mean:

'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The facts in dispute must be *critical* to the outcome of the case and the dispute must be *genuine,* such that

the evidence could support a verdict in favor of the non-moving party. *Id.* at 248, 106 S.C. at 2510; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists, and that it is entitled to judgment as a matter of law. *Celotex Corp., supra,* 477 U.S. at 323, 106 S.Ct. at 2552; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Gulfstream Land and Development v. Commissioner,* 71 T.C. 587, 596, 1979 WL 3690 (1979). Further, the facts relied upon by the moving party must be viewed in the light most favorable to the non-moving party so that any doubt as to the existence of a genuine issue of material fact will be resolved in favor of denying the motion. *Adickes v. S.H. Kress & Co. v. S.H. Kress & Co., supra; United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

In opposing a motion for summary judgment, the other party may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the other party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp., supra,* [477 U.S.] at 324, 106 S.Ct. at 2553.

Nevertheless, the motion must be granted if the Court is satisfied that no real factual controversy is present, so that the remedy can serve 'its salutary purpose in avoiding a useless, expensive and time consuming trial where there is no genuine, material fact issue to be tried.' *Lyons v. Board of Education,* 523 F.2d 340 (8th Cir.1975).

The standard for ruling on summary judgment motions 'mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

B. *Statutory Analysis*

In this proceeding, plaintiff seeks a determination that his federal income tax obligations for the 1985, 1986 and 1987 tax years are dischargeable. Section 523(a) states in pertinent part:

[a] discharge under section ... 1141 ... of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

Section 523(a)(1)(A) does not apply in this proceeding. Defendant has not asserted a claim under 11 U.S.C. 507(a)(2) or 507(a)(7) nor has defendant argued that it has such a claim. Section 507(a)(2) only applies to gap claims in an involuntary bankruptcy proceeding. While § 507(a)(7) provides:

Seventh, allowed unsecured claims of governmental units; only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing or the petition

for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.

Section 507(a)(7) does not apply because (i) none of the taxes were for a taxable year ending within three years of the filing date (the latest taxable year was 1987 and the bankruptcy filing date was February 11, 1993), (ii) none of the taxes were assessed within 240 days of the bankruptcy filing date (the latest assessment was January 27, 1992), and (iii) all of taxes were assessed before the bankruptcy filing date and were last payable without penalty more than one year before the bankruptcy petition (the 1985 amounts were assessed on December 23, 1991 and the 1986 and 1987 amounts were assessed on January 27, 1992).

Section 523(a)(1)(B) also does not apply in this proceeding. Specifically, it does not apply because (i) a return was filed for each of the years 1985, 1986 and 1987 and (ii) the return was filed on or before the date the return was due and prior to two years before the date of the filing of the petition. Defendant also has not raised any issue regarding 11 U.S.C. 523(a)(1)(B) in this proceeding.

Only § 523(a)(1)(C) could have rendered any of plaintiff's obligations to defendant non-dischargeable. Defendant argues that pursuant to § 523(a)(1)(C), plaintiff's obligations are non-dischargeable because (i) under a preponderance of the evidence standard, the Court should reexamine its prior determination in the claims hearing and reach the contrary conclusion, that is that plaintiff made a fraudulent return or willfully attempted in any manner to evade or defeat

taxes for the 1985, 1986 and/or 1987 tax years and that (ii) plaintiff fraudulently transferred property prior to his bankruptcy filing to evade taxes for those years. The Court will examine each of defendant's arguments in light of the evidence before the Court.

### 1. All of Plaintiff's Penalties are Dischargeable.

■ The Eleventh Circuit Court of Appeals in *In re Burns*, 887 F.2d 1541 (11th Cir.1989) held that all tax penalties based on acts that occurred more than three years before bankruptcy are dischargeable regardless of the dischargeability of the underlying tax liability. *Id.* at 1544. Because all three tax years, 1985 through 1987 were more than three years prior the petition date of February 11, 1993, any penalties for those tax years are dischargeable. Defendant does not contest the dischargeability of the penalties assessed against plaintiff. Accordingly, plaintiff is entitled to summary judgment on Counts XII, XIII, and XIV as a matter of law.

### 2. Res Judicata, Collateral Estoppel and Issue Preclusion.

a. The claims hearing and the order are res judicata and bar relitigation of the dischargeability elements of § 523(a)(1)(C)

■ A final determination on the merits bars further claims by parties based on the same set of facts. Res judicata bars not only matters actually litigated in a prior action but also bars "[A]ny other admissible matter which might have been offered for that purpose. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever...." *In re Macks*, 167 B.R. 254 (Bankr.M.D.Fla.1994). In *Macks*, the United States of America Internal Revenue Service prevailed on a motion for summary judgment in a dischargeability proceeding involving the attempted discharge of a debtor's income tax liability because of the res judicata effect of a prior Federal

District Court determination that debtor had fraudulently conveyed property.

■ Defendant has raised, and attempts to litigate the same issues in this proceeding that were raised and litigated in the claims hearing. In fact, defendant alleged in its answer, as its third defense, that "Counts VIII through XIV should be dismissed for failure to state a claim if the Court rules in favor of the United States on the Debtor's Objection to Claim, since such a ruling will provide a basis for excepting the liabilities in issue from discharge under 11 U.S.C. § 523(a)(1)(C)." This Court's determination that plaintiff did not make a fraudulent return or willfully attempt in any manner to evade or defeat income taxes in claims hearing is res judicata in this dischargeability proceeding.

b. Collateral estoppel and issue preclusion bar relitigation of the dischargeability elements of § 523(a)(1)(C).

■ In *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the United States Supreme Court held that collateral estoppel principles apply in discharge exception proceedings pursuant to Section 523(a). Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a "full and fair opportunity" to litigate that issue in an earlier case. *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Under federal issue preclusion rules, a federal judgment collaterally estops relitigation of the issue in a subsequent proceeding where (i) the issue to be precluded has actually been litigated in the prior proceeding; (ii) the determination of the issue in the prior litigation is critical and necessary to the judgment in that earlier action; and (iii) the issue to be precluded is identical to the one involved in the prior action. *In re Halpern*, 810 F.2d 1061, 1064 (11th Cir.1987); *In re Latch*, 820 F.2d 1163, 1166 (11th Cir.1987).

In this proceeding, the issue to be precluded, whether plaintiff made a fraudulent return or willfully attempted in any manner to evade or defeat such tax, was specifically litigated in the claims hearing and constitutes a large portion of the order and supporting findings and conclusions. In addition, the Court's determination that the statute of limitations had expired on the 1985 penalties was dependent upon a finding of civil tax fraud, thus the finding that plaintiff did not make a fraudulent return or willfully attempt to evade or defeat such tax was critical and necessary to the order and findings and conclusions entered. Finally, the issue to be precluded is identical to the issue presented in this proceeding.

Although defendant argues that the burden of proof in the claims hearing (clear and convincing evidence) is different from the burden of proof in the dischargeability proceeding (preponderance of the evidence), the issue is the same and the Court finds that the determinations made in the order and findings and conclusions would not be altered by a different standard of proof.

3. *Even if the Doctrines of Res Judicata, Collateral Estoppel and Issue Preclusion did not require Summary Judgment for Plaintiff, there is no Dispute of Material Fact and Plaintiff is Entitled to Judgment as a Matter of Law.*

Even if the doctrines of res judicata, collateral estoppel and issue preclusion did not bar relitigation of whether plaintiff made a fraudulent return or willfully attempted in any manner to evade or defeat such taxes in this proceeding, the motion for summary judgment should be granted because there is no dispute of material fact.

■ Section 523(a)(1)(C) provides that, in order to establish nondischargeability, debtor must have made a fraudulent return or willfully attempted in any manner to evade or defeat such tax. Although this Court has not yet ruled on this issue, other bankruptcy courts in this district have held that in order to establish nondischargeability based on tax evasion, the government must show that the taxpayer had knowledge of the falsehood of the return and acted with specific intent to

evade a tax believed to be owing. *E.g. In re Cox,* 156 B.R. 323 (Bankr.M.D.Fla.1993); *In re Williams,* 164 B.R. 352 (Bankr.M.D.Fla. 1994). Defendant has appealed both of the foregoing decisions and urges a lesser standard that does not require a showing by the government of specific intent or an affirmative act.

This Court does not need to reach the issue of whether defendant must show specific intent or an affirmative act in order to prevail. Under either standard, plaintiff is entitled to summary judgment. At page fifteen of the findings and conclusions, the Court said "the IRS has failed to show by clear and convincing evidence that debtor possessed the requisite fraudulent intent to evade taxes when he filed his 1985 return. The factors are even less convincing for 1986 and 1987 because there is no illegal commitment fee activity." In addition, the Court found that plaintiff's explanation of his income understatements "is credible" and that plaintiff's reporting of interest earned on the commitment fees on his tax returns "is inconsistent with an intent to conceal assets from the IRS to evade taxes on these amounts." *Id.* at 14. The Court also found that "[o]ther factors which indicate that debtor did not possess fraudulent intent are present." *Id.* at 14. Finally, the Court found that "[t]he Court does not, however, conclude that debtor was attempting to conceal assets in order to evade taxes." *Id.* at 14.

In addition, the uncontradicted affidavit shows that there is no genuine issue of fact regarding whether plaintiff fraudulently transferred property prior to the filing of this bankruptcy in order to evade or defeat any of the amounts that are the subject of the remaining counts of the complaint. Thus there is no fraudulent transfer on which to base a finding of willful attempt to evade a tax.

### CONCLUSION

Plaintiff is entitled to summary judgment under the doctrines of res judicata, issue preclusion and collateral estoppel. All three doctrines bar relitigation of all issues and claims that were raised or could have been raised and determined in the claims hearing. Even if those doctrines did not apply to this proceeding, there is no dispute of material fact that plaintiff did not make a fraudulent return or willfully attempt in any manner to evade or defeat federal income taxes for the 1985, 1986 or 1987 tax years. Thus under either theory, plaintiff is entitled to a summary judgment as a matter of law. The Court will enter a separate judgment consistent with these findings of fact and conclusions of law.

### *ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNTS VIII, IX, X, XI, XII, XIII, AND XIV AND INSTRUCTING CLERK TO CLOSE THIS ADVERSARY PROCEEDING FILE*

This proceeding is before the Court on the plaintiff's motion for summary judgment on Counts VIII, IX, X, XI, XII, XIII, and XIV. Upon the Findings of Fact and Conclusions of Law separately entered, it is

ORDERED:

1. Plaintiff's motion for summary judgment is granted.

2. Any sums owed to defendant by plaintiff based on 1985, 1986, or 1987 federal income taxes, penalties or interest are discharged pursuant to 11 U.S.C. 1141(d) and are not excepted from discharge under 11 U.S.C. § 523.

3. The Clerk shall close this adversary proceeding file.