**In re Jimmy Lee COX, Debtor.**

**Jimmy Lee COX, Debtor,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 91–5808–8P7.
Adv. No. 91–627.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 17, 1993.

Ronald R. Bidwell, Tampa, FL, for plaintiff debtor.

Bruce T. Russell, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, Benjamin A. DeLuna, Dist. Counsel, I.R.S., Jacksonville, FL, Robert W. Genzman, U.S. Atty., Civ. Div., Tampa, FL, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is the dischargeability of a debt admittedly owed by Jimmy Lee Cox (Debtor) to the United States of America, Internal Revenue Service (Government). The adversary proceeding was commenced by the Debtor who in Count I is seeking a determination that the income taxes owed to the Government for the tax years 1982 through 1987 representing a total debt of $142,948.83, together with accrued penalties and interest to the date of Debtor's petition, are not subject to the exception to the discharge set forth in § 523(a)(1) of the Bankruptcy Code. In Count II of the Complaint, the Debtor seeks a determination of the nature, extent and validity of the IRS prepetition liens asserted for the Debtor's liabilities for income taxes for years 1982 through 1987. The facts as established at the final evidentiary hearing are as follows:

At the time relevant, the Debtor was a self-employed agricultural broker. At the time of the filing of his voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code the Debtor was married to Shirley Cox (Mrs. Cox). This was the second time the Debtor married Mrs. Cox. Their first marriage ended in divorce in July, 1972. The couple remarried on November 22, 1975. Mrs. Cox's willingness to remarry the Debtor was based on the condition that she would no longer have any financial involvement with the Debtor or his business. She insisted on this condition

because his disastrous financial transactions during their first marriage. Based on this, the couple no longer filed joint tax returns and she no longer had any business involvement with the Debtor. Subsequently, on November 27, 1978, Mrs. Cox acquired real property known as the Beau Lane property. It is without dispute that the Debtor owed no taxes for the tax year 1978 when the Beau Lane property was purchased.

In August, 1988, the Debtor's sons Warren Cox and Mark Cox formed M & W Agriculture, Inc., a Florida Corporation which was an agricultural brokerage business. The sons were the sole officers, directors, and shareholders of the corporation. Shortly after the corporation was formed, the Debtor was employed by the corporation because of extensive business contacts in the agricultural brokerage market. As an employee, the Debtor earned $5,200.00 in 1988, $15,175.00 in 1989 and $30,400.00 in 1990. The Debtor never had and still does not have any financial interest in the corporation. The corporation is organized as a "sub-chapter S corporation," and all undistributed income of the corporation was reported on the individual income tax returns of Warren Cox and Mark Cox, the sons of the Debtor, and they paid their respective income taxes.

In the summer of 1988 Della Wallace (Ms. Wallace), a Revenue Officer employed by the Internal Revenue Service, was assigned the delinquent tax accounts of the Debtor for the years 1982, 1983 and 1984. Ms. Wallace's responsibility was to collect the unpaid balance owed by the Debtor for these years and to assure that the Debtor complies with his obligation to file the appropriate tax returns for the other years which were still open. In compliance with Ms. Wallace's request, the Debtor filed his federal income tax returns for the years of 1982, 1983 and 1984 and submitted Form 433–A Collection Information Statement for Individuals on which he furnished all of the financial information requested. Ms. Wallace reviewed the information and after due diligence determined that the information was true and correct and that there was no evidence of fraudulent intent to evade payment of taxes. Ms. Wallace also requested that the Debtor prepare and file the 1985, 1986 and 1987 federal tax returns. The Debtor complied and on August 31, 1988 filed tax returns for these years. Ms. Wallace also reviewed these returns and found no evidence of fraud relating to the years of 1985, 1986 and 1987.

The following year the Debtor, in full satisfaction of taxes due for the year 1988, timely filed his 1988 tax return and paid $28,000 with funds obtained from Mrs. Cox. The Debtor also timely filed and paid his income tax liabilities for 1989, 1990 and 1991. In April 1990, Mrs. Cox purchased a home titled solely in her name in Oakland, Florida. She again borrowed $62,113.33 from M & W Agriculture, Inc. to finance the purchase of this residence and was granted a second mortgage which was properly recorded in due course against the property. None of the Debtor's funds were used to pay anything in connection with this purchase. The Debtor paid no consideration for the home and did not furnish any funds towards the acquisition of the property.

Based on the foregoing, it is the Debtor's contention that the tax liabilities for the tax years 1982 through 1987 are not excepted from discharge under § 523(a)(1) and are dischargeable under § 727. The Internal Revenue Service asserts in its Amended Answer that the debt was nondischargeable pursuant to § 523(a)(1)(C) in that the Debtor made a fraudulent return or wilfully attempted in any manner to evade or defeat taxes in question by shielding his assets and income by virtue of a secret or hidden interest in M & W Agriculture, Inc. or by receiving a direct benefit from the two loans from Mrs. Cox or from the corporation. There is no evidence in this record that any funds of the Debtor were used to acquire either of the properties.

In determining whether the tax obligations in question are dischargeable, this court must initially focus its analysis on section 523(a)(1) of the Bankruptcy Code which provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in sections 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

■ To accomplish the purpose behind the Bankruptcy Code, which is to provide the Debtor with a fresh start, it is assumed that a debt is dischargeable unless the party complaining that the debt is nondischargeable meets the burden of proving nondischargeability. *Tilley v. Jessee*, 789 F.2d 1074 (4th Cir.1986). The standard of proof required in adversary proceedings brought under 11 U.S.C. § 523(a)(1)(C) is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The general rule is that the burden of proof is on the Debtor. However, on the issue of fraud, the burden of proof shifts to the Government. *Stoltzfus v. U.S.*, 398 F.2d 1002 (3rd Cir.1968), *cert. denied*, 393 U.S. 1020, 89 S.Ct. 627, 21 L.Ed.2d 565 (1969); *In re Kirk*, 98 B.R. 51 (Bankr.M.D.Fla.1989).

■ To prove fraud the Defendant must show that the taxpayer acted with specific intent to evade a tax believed to be owing. *Korecky v. Commissioner*, 781 F.2d 1566, 1568 (11th Cir.1986). The Government must establish (1) knowledge of the falsehood of the return; (2) an intent to evade the taxes; and (3) an underpayment of the tax. *Considine v. U.S.*, 227 Ct.Cl. 77, 645 F.2d 925, 929 (1981), cert. denied 459 U.S. 835, 103 S.Ct. 79, 74 L.Ed.2d 76

(1982). The Government has not met that burden. This record is devoid of any evidence of fraud on the part of the Debtor. On the contrary, the Debtor filed the tax returns for the years in question and fully cooperated with Ms. Wallace, the Internal Revenue Service agent who was satisfied that the Debtor's tax returns were not fraudulent. A further investigation by the Internal Revenue Service conducted by Janice Waitman after the Debtor filed his Petition for Relief failed to uncover any evidence that the Debtor is hiding assets or that he is shielding his assets and income by virtue of some secret or hidden interest in M & W Agriculture, Inc. or by receiving a direct benefit from the two loans from the corporation as the Defendant claims. The Debtor never had any financial interest in the corporation, and the loans were made to Mrs. Cox alone and even if Mrs. Cox has no obligation to repay the loans, these were clearly nothing more than a gift to her from her sons or from the corporation and certainly would not be taxable income to the Debtor.

■ Count II of Debtor's Complaint sought a determination of whether Defendant's pre-petition liens are determined to be enforceable and, if so, to what extent. 26 U.S.C. § 6321 provides that a tax assessment shall create a lien in favor of the United States upon all property and rights to property, whether real or personal belonging to the Debtor. 26 U.S.C. § 6322 provides that the lien shall continue until the tax liability for the amount so assessed is satisfied or becomes unenforceable. In the instant case, the tax liabilities are solely the liability of the Debtor. However, any real property upon which the Defendant contends these liens are attached are owned in the sole name of Mrs. Cox. The first of said properties, the Beau Lane property was acquired November 27, 1978. Therefore, it is clear that this property was not titled solely to Mrs. Cox in an attempt to evade payment of her husband's tax liabilities for the years 1982 through 1987 because the property was acquired before there were any known tax liabilities. Obviously, there cannot be a tax lien if there is

no valid underlying obligation to pay taxes. Moreover, the Oakland property was acquired in 1990 and it is clear that the Debtor did not owe any taxes for that tax year. Having concluded the Debtor did not evade any of the taxes for the years in question, obviously there cannot be a valid enforceable tax lien against any of the properties particularly since this record reveals no doubt that the properties were acquired by Mrs. Cox and the Debtor never had any ownership interest in these properties.

A separate final judgment shall be entered in accordance with the foregoing.