**In re Joseph James RILEY, Christine Marie Riley, Debtors.**

**Joseph James RILEY, Christine Marie Riley, Plaintiffs,**

v.

**UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 93–4774–8G7. Adv. No. 93–381.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 7, 1996.

___

Jay Passer, Tampa, FL, for plaintiffs.

Mary A. Hervey, Washington, DC, for defendant.

### *FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION*

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE IS** a Chapter 7 liquidation case, and the matter under consideration in this adversary proceeding is the dischargeability of taxes due and owing by Joseph James Riley ("Riley") and Christine Marie Riley ("Mrs. Riley"), (together, Riley and Mrs. Riley are referred to as the "Debtors") to the United States of America (the "Defendant" or the "IRS") for the tax years 1980 through 1986.

The Debtors commenced this adversary proceeding by filing the Complaint to Determine Dischargeability of Debt, initiating an action to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(1). The Debtors allege that they are obligated to the IRS for Form 1040 Income Taxes for 1980 through 1986 in the amount of $2.0 million, and that this amount is not excepted from discharge because: (1) their tax returns were filed prior to three years before the date of the filing of their petition, (2) the tax debts were not assessed within 240 days prior to the date of the filing of their petition and no offer to compromise has been submitted by the IRS, and (3) the Debtors' tax returns were not fraudulent and the Debtors have not willfully attempted in any manner to evade or defeat the tax. In the complaint, the Debtors request the Court to determine that their tax liability for 1980 through 1986 is dischargeable pursuant to § 532(a)(1) of the Bankruptcy Code.

The IRS filed an Answer and Defenses, admitting that the Debtors are indebted to the IRS for unpaid federal income tax liabilities for tax years 1980 through 1986, admitting that (1) the Debtors' tax returns were filed prior to three years before the date of

the filing of their petition, and (2) the tax debts were not assessed within 240 days prior to the date of the filing of their petition and no offer to compromise has been submitted by the Defendant, but denying that (3) the Debtors' tax returns were not fraudulent and the Debtors have not willfully attempted in any manner to evade or defeat the tax. Additionally, the IRS asserted the defense that the Debtors' federal income tax liabilities are nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C).

One month prior to trial, the IRS filed its Trial Brief. In its Trial Brief, the IRS included the additional contention that the tax liabilities are nondischargeable pursuant to 11 U.S.C. § 523(a)(7). The IRS asserted that restitution payable to the IRS as part of a criminal sentence is nondischargeable, and that the tax liabilities are nondischargeable because they constitute restitution imposed in conjunction with a criminal sentence of Riley.

Two days later, the Debtors filed a Motion in Limine for Protective Order, objecting to consideration of the Defendant's argument and any evidence relating to § 523(a)(7) because no facts or circumstances which would warrant its consideration had been pled or otherwise stated by the Defendant and the Defendant's answer failed to timely raise such contentions. The hearing on the Motion in Limine and the trial were scheduled at the same time.

At the trial, the parties stipulated that the tax debts are not excepted from the Debtors' discharge pursuant to §§ 523(a)(1)(A) and (B). The remaining issue raised by the pleadings,[1] therefore, was the question of whether the tax debts are excepted from discharge pursuant to § 523(a)(1)(C). At the beginning of the trial, in response to the Debtors' Motion in Limine, the IRS requested to be allowed to present evidence supporting its contention that the tax liabilities are not dischargeable under § 523(a)(7). Follow-

ing the conclusion of the plaintiffs' evidence, the IRS orally moved to amend its answer to add as a counterclaim the contention that the tax liabilities are not dischargeable under § 523(a)(7). The Court took the motion in limine and the oral motion to amend the answer under consideration, and allowed the IRS to submit all evidence and make all arguments which the IRS believed appropriate to support its contentions.

Therefore, the Court must determine the dischargeability of the federal tax liability pursuant to § 523(a)(1)(C), determine if the Defendant's answer may be amended to include a counterclaim seeking to have the debt deemed nondischargeable pursuant to § 523(a)(7), and if the counterclaim is allowed, determine the dischargeability of the debt pursuant to § 523(a)(7).

### Background

Riley began a career as a securities trader on Wall Street in the early 1970's. In 1978, Riley was hired by The Securities Group ("TSG"), an investment group which had been formed to invest in United States government securities through limited partnerships. TSG employed a number of traders in government securities, and Riley was hired as a treasury bill[2] trader.

As part of his job, Riley executed transactions known as "treasury bill rolls." Riley describes the "treasury bill rolls" as follows: TSG established short positions[3] in treasury bills which were to mature in the current tax year. At essentially the same time, it obtained long positions[4] in treasury bills which were to mature in the subsequent tax year. When the short positions matured, the short sales had to be covered, generating losses which would generally be recognized in that tax year as ordinary losses. When the long positions matured in the subsequent tax year, there would be gains which would generally be recognized in the following year as capital gains. Because the losses and gains were basically determined by discount rates

---

1. The Trial Brief by United States is not a pleading. *See* Rule 7(a), Fed.R.Civ.P., made applicable by Rule 7007, Fed.R.Bankr.P.

2. Riley states that a treasury bill is a particular type of government security, that treasury bills

do not have coupons but are sold at discount, and that they have maturities of one year or less.

3. Commitments to sell securities it did not own.

4. Purchases.

and applicable periods of time, with losses over shorter periods and gains over longer periods, the combination of the transactions yielded profits. Additionally, the losses were generally ordinary losses,[5] and the gains were generally capital gains. Riley states that "treasury bill rolls" were not uncommon during this period of time.

In 1980, Riley became Vice President of Trading in Treasury Bills for TSG. Also in that year, some of the traders at TSG, including Riley, were offered special limited partnership interests which allowed them to invest through TSG without having to meet some of the requirements which were placed on the original limited partners. Riley invested $14,188.37 in 1980 in TSG and became a special limited partner in TSG. On their 1980 income tax return, the Debtors claimed an ordinary tax loss in the amount of $159,953 relating to TSG.

In 1981, the tax laws applicable to the "treasury bill rolls" were changed, ending the tax advantages of these transactions. TSG then developed a different method of investing which also generated tax benefits. The transactions which it developed were one-sided, long positions in treasury securities, with financing, known as "repurchase agreements." A portion of the interest expense incurred by the financing was paid and recognized as an expense in the current tax year, and the profit on the long position was taken in the following tax year. In 1981, the Debtors invested $101,900 in TSG. On their 1981 income tax return, the Debtors claimed the following relating to TSG: interest expense of $67,151; interest income of $31,559; dividend income of $16; and an ordinary loss of $236,031.

In 1982, Riley became Executive Vice President and Head Trader at TSG. In 1982, the Debtors invested $144,000 in TSG. On their 1982 income tax return, the Debtors claimed the following relating to TSG: interest expense of $4,034; dividend income of $15,002; and an ordinary loss of $365,501.

In 1981, Sentinel Securities, a firm with which TSG transacted business, was closed by the IRS for illegal tax related trades. In 1982, the IRS began investigating TSG, and records were subpoenaed and turned over to the IRS. In late 1982, as a result of the investigation, Riley refused to transact any more tax related trades. Riley left TSG in January, 1983. In April, 1983, while the IRS investigation was still pending, TSG was sold. The Debtors did not invest in TSG in 1983.

As a result of the investigation of TSG, Riley pled guilty to a single count of conspiracy to file fraudulent and false federal partnership tax returns in the United States District Court for the Southern District of New York on April 16, 1987. On May 27, 1987, Riley also pled guilty to two counts of aiding and abetting in the preparation of fraudulent and false federal partnership tax returns for Cralin Associates and Plaza Securities. On October 27, 1989, Riley's sentencing hearing was conducted, and on November 20, 1989, Riley's sentence was entered. A prison sentence was suspended and Riley was placed on probation for three years, provided he performed 200 hours of community service each year.

After the sentencing of Riley, the IRS conducted a review and audit of the Debtors' tax returns. In October, 1991, the Debtors and the IRS executed a Closing Agreement on Final Determination Covering Specific Matters, (the "Closing Agreement"), in which they agreed to the amounts of the Debtors' income, gain, loss, deductions, or credit with respect to TSG. The IRS has issued Certificates of Assessments and Payments pertaining to Forms 1040 for the Debtors for the tax years 1980 through 1986, indicating that the Debtors owe the IRS the total amount of $2,126,832.19 for unpaid taxes, assessments, interest, costs, and penalties.

The Debtors filed their voluntary joint petition for relief under Chapter 7 of the Bankruptcy Code on April 29, 1993.

### The Dischargeability of the Debtors' Federal Income Tax Debt Pursuant to § 523(a)(1)(C)

The Debtors claim that their Form 1040 tax liability is dischargeable pursuant to

---

5. The IRS presented testimony that with respect to these transactions, ordinary losses offset income dollar for dollar, but the deduction for capital losses was limited to a maximum of $3,000.

§ 523(a)(1)(C) because their returns were not fraudulent and they have not willfully attempted in any manner to evade or defeat such tax. The IRS denies the Debtors' allegations.

■ Exceptions to a debtor's general discharge are controlled by § 523(a), which encompasses congressional policy that certain debts should be excluded from discharge because of overriding public policy concerns relating to the type of debt, the manner in which the debt was incurred, or the underlying social responsibility that the debt represents. *See* Norton Bankruptcy Law and Practice 2d § 47:1. Exceptions to discharge are construed narrowly, however, and in favor of the debtor. *See In re Howard,* 167 B.R. 684 (Bankr.M.D.Fla.1994). The burden of proof is on the party seeking to except the debt from the discharge. *See In re Cox,* 156 B.R. 323, 326 (Bankr.M.D.Fla.1993); *In re Kirk,* 98 B.R. 51, 55 (Bankr.M.D.Fla.1989). The standard of proof required in adversary proceedings brought under § 523 is a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Debts for taxes with respect to which a debtor made fraudulent returns or which a debtor willfully attempted to evade or defeat are excepted from discharge by § 523(a)(1)(C):

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

.    .    .    .    .

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

Section 523(a)(1)(C) provides two alternative grounds upon which a debtor's tax liability may be declared nondischargeable. The first is where the debt is for a tax with respect to which the debtor made a fraudulent return. The second is where the debt is for a tax with respect to which the debtor willfully attempted in any manner to evade or defeat.

### Fraudulent Return

#### A. Legal Principles

■ To prevail under the first ground, the burden is on the Defendant to show (1) the Debtors' knowledge of the falsehood of the return, (2) the Debtors' intent to evade the taxes, and (3) an underpayment of the tax. *See In re Williams,* 164 B.R. 352, 354 (Bankr.M.D.Fla.1994); *In re Cox,* 156 B.R. at 326; *In re Kirk,* 98 B.R. at 55. Where the debtor signed a return which he knew was false, and which resulted in the underpayment of a tax, fraud is committed. *See In re Hopkins,* 133 B.R. 102 (Bankr.N.D.Ohio 1991). Conversely, when the debtor is unaware of his tax liability when his return is filed, there is no fraudulently filed return. *See In re Gathwright,* 102 B.R. 211 (Bankr. D.Or.1989). The existence of fraud is a question of fact to be determined upon consideration of the entire record. *See In re Kirk,* 98 B.R. at 55. Its proof is rarely established through direct proof of intention to evade taxes. *Id.* It may depend to some extent upon circumstantial evidence. *Id.* It can also be gleaned by surveying the whole course of conduct of the debtor, and it may rest upon reasonable inferences properly drawn from such conduct or the evidence of record. *Id.*

#### B. Collateral Estoppel

■ Riley pled guilty to three criminal charges, and the IRS contends that these pleas establish the issues which Riley seeks to litigate in this action by the doctrine of collateral estoppel. An excellent discussion of the application of the doctrine of collateral estoppel is contained in the case of *In re Olson,* 170 B.R. 161 (Bankr.D.N.D.1994). For the doctrine of collateral estoppel to apply, (1) the issue sought to be precluded must be the same issue as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination of the issue must have been essential to the final judgment. *Id.* at 165.

■ Riley's pleas in the criminal litigation do not estop him from raising the issues involved in this litigation, however, since the issues to which he pled guilty are not the same as the issues involved in this litigation.

Riley pled guilty to one count of conspiracy to commit tax evasion in connection with the partnership returns of TSG. However, a conviction of conspiracy to commit tax evasion is not a conviction of tax evasion. The offense of conspiracy to commit tax evasion is a separate and distinct offense from the offense of tax evasion. The Fifth Circuit Court of Appeals [6] has held in the case of *United States v. Jasso*, 442 F.2d 1054, 1056 (5th Cir.1971), that "[a] conspiracy conviction does not require the commission of any completed substantive offense."

Riley also pled guilty to two counts of aiding in the preparation of false returns for two partnerships in which he did not have an interest, Cralin Associates and Plaza Securities. Since Riley did not have an interest in these partnerships, no information from these partnerships was included in Riley's personal tax returns.

Accordingly, these convictions do not estop Riley from litigating the issues before the Court at this time. As far as the record shows, Riley was never charged with or convicted of personal income tax fraud or evasion.

## C. Evidence

■ Riley was one of several traders of government securities for TSG. Riley testified that the tax related trades constituted only a small portion, approximately 5%, of the transactions of TSG. Riley testified that, in conducting these transactions, he was acting on the instructions of his superiors at TSG. The Executive Committee of TSG was in charge of all policy decisions for TSG, and Riley was not a member of the Executive Committee. Riley testified that "treasury bill rolls" were fairly common transactions. Riley testified that he questioned TSG's chief

financial officer and was advised that this was a tax loophole, and that he questioned TSG's in-house legal counsel and was advised not to worry about the transactions. Riley testified: "I didn't do a lot to challenge it because my questions were directed to people who I trusted and thought understood these tax laws a lot better than I ever will. My questions went to the chief financial officer and to the in-house counsel of the firm, and both of them assured me that there was no problem with them." There was no testimony to controvert these assertions, and Riley's testimony was credible.

The Debtors' personal income tax returns for the period in question were prepared by certified public accountants. The returns for 1980 and 1981 show that they were prepared by the firm of Arthur Young & Company. Riley indicates that the subsequent returns were prepared by the firm of Oppenheim, Appel & Dixon.

Riley testified that he did not realize that it was illegal to generate tax losses on transactions of this nature until several years after the transactions were completed and the tax returns had been filed. Riley testified that it was in late 1985, when the government was conducting its investigation and prosecution of the participants of the treasury bill rolls, that he realized that the tax treatment which had been utilized with respect to the transactions was illegal.[7] At that time, he began to cooperate with the government in its investigation. Riley testified that he provided substantial assistance to the prosecution, and instructed both IRS and U.S. Attorney personnel so that they would better understand the transactions that took place at TSG. The value of Riley's assistance was acknowledged by the prosecution and by the court at the sentencing hearing on October 27, 1989.

Mrs. Riley testified that she was not aware that their returns were improper when the returns were filed. Mrs. Riley testified that

---

**6.** Decisions of the Fifth Circuit Court of Appeals prior to October 1, 1981, are precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Alabama,* 661 F.2d 1206 (11th Cir.1981).

**7.** Riley testified that the transactions themselves were not illegal. Riley testified that there are extensive regulations and reporting requirements which apply to trading in government securities, and that those requirements were complied with.

at the time she signed the tax returns which were prepared by the accounting firm, she did not have any reason to believe that they were false and that by signing the returns she was not trying to evade paying taxes. Mrs. Riley testified that she did not review the returns before she signed them. She stated that she was not very good with numbers and therefore she was not interested or involved in any aspect of the preparation or filing of their tax returns. Moreover, Mrs. Riley was not an employee of TSG, she was not involved in the IRS investigation of the treasury bill rolls, and she was never charged with conspiracy or the actual commission of tax evasion or tax fraud.

According to the Certificate of Assessments and Payments, the IRS has not assessed a penalty for underpayment due to fraud.

The Closing Agreement between the Debtors and the IRS, which relates to the additions to the Debtors' taxes and the penalties with respect to TSG, does not appear to contain a penalty for underpayment due to fraud and states that the Debtors shall not be liable for fraud penalties, with one possible exception. For taxable year 1981, the Closing Agreement states that the Debtors are subject to a penalty pursuant to I.R.C. § 6653(b), the section of the Internal Revenue Code which provides for a penalty if an underpayment is due to fraud; however, the penalty in the Closing Agreement is "five percent (5%) on the tax deficiency for said year," which appears to be the penalty pursuant to § 6653(a) for an underpayment due to negligence.[8] *See* Closing Agreement, paragraphs (7) and (12). The Certificate of Assessments and Payments for tax year 1981 shows no fraud penalty, but only a "negligence penalty." The IRS presented no testimony to clarify this.[9]

The direct testimony of Riley and Mrs. Riley is largely uncontroverted, and the case of the IRS is mainly circumstantial. Essentially, with respect to Riley, the IRS asserts that he was so significantly involved with TSG and took tax benefits so substantial that his returns must have been fraudulent. With respect to Mrs. Riley, the IRS asserts that she filed fraudulent returns, and whether or not she knew they were fraudulent is not relevant.[10]

The Court has evaluated the testimony and the record. With respect to Riley, the Court does not believe that the IRS has overcome the burden of proof which is imposed upon it to establish that Riley filed fraudulent returns. With respect to Mrs. Riley, the IRS does not cite any cases in support of its legal argument, and all cases reviewed by the Court are consistent in their holdings that a debtor must have known a return was fraudulent before the debt is excepted from discharge.[11]

### Willful Attempt to Evade or Defeat Taxes

■ The IRS argues that the Debtors willfully attempted to evade their tax liabilities since they knew but failed to pay their tax liabilities, and since they failed to fully report their income. *See* Trial Brief by United States, p. 3.

As discussed above, the IRS has not overcome its burden of proving that the Debtors had knowledge of the tax liabilities or knowingly failed to fully report their income. Riley was an employee of TSG and was not responsible for policy making decisions at the firm. He simply executed the trades. Mrs. Riley was not employed in the industry and knew nothing about the tax implications of the transactions. Their tax returns were

---

**8.** In 1981, the penalty for underpayment due to negligence was 5% of the underpayment, and the penalty for underpayment due to fraud was 50% of the underpayment.

**9.** Even if the penalty with respect to 1981 were a fraud penalty, under the circumstances of this case the Debtor would not be estopped from litigating the issue which is before the Court in this case. *See In re Olson, supra* (consent judgment by Tax Court assessing civil fraud penalties on Chapter 7 debtors did not finally resolve issue

of fraud, and thus would not be given collateral estoppel effect in nondischargeability proceeding).

**10.** The IRS argues that § 523(a)(1)(C) does not require a debtor to knowingly file a fraudulent return. The IRS claims that it needs to prove only that a fraudulent return was filed.

**11.** *See,* for example, *In re Kirk, supra.*

prepared by certified public accountants and signed by the Debtors with the understanding that they were prepared in compliance with the current tax laws.

The Court has evaluated the testimony and the record, and does not believe that the IRS has overcome the burden of proof which is imposed upon it to establish that the debt is nondischargeable under the second ground set forth in § 523(a)(1)(C).

### Dischargeability of the Debt Pursuant to § 523(a)(7)

At the trial, the IRS orally moved to amend its answer to add a counterclaim under § 523(a)(7), arguing that the facts underlying the complaint would also support a determination that the debt is not dischargeable pursuant to § 523(a)(7). The IRS had included this contention in its Trial Brief, which it filed one month before trial, and the IRS asserts that the claim pursuant to § 523(a)(7) does not involve any new facts or any new evidence and thus the Debtors would not be prejudiced by the amendment. The IRS argues that it is important to allow the amendment because it is concerned that any claim it has under § 523(a)(7) would be estopped if the Court does not allow the amendment. The Debtors oppose the motion.

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, which is made applicable to adversary proceedings by Rule 7015 of the Federal Rules of Bankruptcy Procedure, once the time to amend pleadings as a matter of course has passed, an amendment to the pleadings is permissible only by leave of court or by obtaining the written consent of the adverse party. Since the Debtors do not consent to the amendment, the Court must determine if the amendment is appropriate.

There is no time limit for filing a complaint to determine the dischargeability of a debt pursuant to § 523(a)(7). *See* Fed.R.Bankr.P. 4007(b).

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R.Civ.P. 13(f), which is made applicable to adversary proceedings by Fed.R.Bankr.P.

7013, also provides that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment."

The most common reasons for denying leave to amend are that the amendment will result in undue prejudice to the other party, is unduly delayed, is offered in bad faith or for a dilatory purpose, or that the party has had sufficient opportunity to state a claim and has failed. *See* James William Moore, *Moore's Federal Practice,* ¶ 15.08, pp. 15–69 *et seq.* (2d Ed.1995). These reasons are not exhaustive, and a court may deny leave to amend for other good and sufficient reason. *Id.* While laches and unexcused delay may bar a proposed amendment, delay alone, regardless of its length, is not enough to bar it if the other party is not prejudiced. *Id.* Amendments may be offered at trial. *Id.* The entire spirit of the rules is to the effect that controversies shall be decided on the merits. *Id.* at 15–46 *et seq.* Courts have not been hesitant to allow amendments for the purpose of presenting the real issues of a case, where the moving party has not been guilty of bad faith and is not acting for the purpose of delay, the opposing party will not be unduly prejudiced, and the trial of the issues will not be unduly delayed. *Id.*

The motion was made at trial, and the amendment adds a counterclaim under a separate provision of the Bankruptcy Code. There is the potential for substantial prejudice on this basis alone. However, in these unique circumstances, the Debtors are not prejudiced by the amendment, and the Court will grant the motion and allow the amendment.

Section 523(a)(7) provides:

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

.    .    .    .    .

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;

The IRS claims that "the tax liabilities are nondischargeable because they constitute restitution imposed in conjunction with Mr. Riley's criminal sentence." *See* Trial Brief by United States, p. 4. The United States Supreme Court has held that restitution owing as part of a criminal sentence is nondischargeable pursuant to § 523(a)(7). *See Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). There is no support in the record, however, for the contention of the IRS that the tax liabilities constitute a restitution award. Riley's sentencing hearing was held on October 27, 1989, and the sentence was entered on November 20, 1989. No provision of the sentence requires the payment of taxes. The District Court Judge who sentenced Riley specifically declined to impose a fine because Riley's "resources are limited, he faces staggering obligations in terms of taxes, some legal expenses, and there are very large judgments against him." (Debtors' Exhibit 2). Thus, the District Judge assumed the existence of the tax liabilities independent of any sentence imposed by him, rather than as a component of the sentence.

The Certificate of Assessments and Payments regarding Riley's 1980 taxes indicated that the "audit assessment" and "manually assessed interest" were not actually assessed until February 28, 1992, two and one-half years after the sentencing. Similarly, the "audit assessment," "negligence penalty," and "manually assessed interest" regarding the Debtors' 1981 taxes were not assessed until February 28, 1992. The assessment dates for the subsequent tax years are also far removed in time from the date of Riley's sentencing, and the record in no way con-

nects Riley's sentence with the tax liabilities. The explanation for the taxes contained in the Certificate of Assessments essentially describes the tax liabilities only as audit assessments and negligence penalties, rather than any other type or category of liability.

The IRS claims that Riley agreed to pay all of his tax liabilities relating to the transactions at TSG in a plea agreement. The Court has reviewed the transcripts of the hearings conducted on April 17, 1987, and October 27, 1989, at which Riley's plea was entered and his sentence imposed, and finds no such agreement in those transcripts. No written plea agreement has been presented to the Court. Following Riley's plea, the court specifically did not impose a fine on Riley. Riley acknowledges that at the time he entered his plea he agreed to back out the losses and pay the resulting tax liabilities, and he subsequently signed the Closing Agreement with the IRS which established the liabilities. Riley's agreement did not result in any court-ordered restitution, however, and therefore is not a fine, penalty, or forfeiture which is excepted from discharge by § 523(a)(7).

Therefore, based on the evidence before the Court, it does not appear that the tax liability was part of a restitution award, and therefore the IRS does not have a valid claim that the debt is excepted from discharge under § 523(a)(7).

### Conclusion

For the reasons expressed herein, the Court determines that the Debtors' tax liabilities for the years 1980 through 1986 are not excepted from discharge by § 523(a)(1)(C) or § 523(a)(7).

Accordingly:

**IT IS ORDERED** that:

1. The Debtors' Motion in Limine for Protective Order is denied.

2. The Defendant's motion to amend its Answer to add a counterclaim is granted.

3. The Court will enter a separate final judgment providing that the Debtors' tax liabilities for the years 1980 through 1986 are