In re Floyd BINKLEY and Elizabeth Binkley, Debtors.

United States of America, Appellant,

v.

Floyd Binkley and Elizabeth Binkley, Appellees.

No. 95–212–CIV–J–21.

United States District Court, M.D. Florida, Jacksonville Division.

May 25, 1999.

Charles R. Wilson, U.S. Attorney's Office, Tampa, FL, Philip Doyle, U.S. Dept. of Justice, Tax Division, Washington, DC, for appellant.

Ronald Cutler, Ronald Cutler, P.A., Daytona Beach, FL, for appellees.

## *ORDER*

NIMMONS, District Judge.

This action is before the Court on an appeal by the United States of America (the "Government") from the Amended Judgment, dated January 13, 1995, of the United States Bankruptcy Court for the Middle District of Florida. In that Amended Judgment, the bankruptcy court, *inter alia*, found that the tax liabilities owed by the debtor Elizabeth Binkley for the years 1980 through 1986 were dischargeable in her Chapter 7 bankruptcy case.

### I. *Jurisdiction*

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 158(a). That statute provides, in pertinent part, that "(t)he district courts of the United States shall have jurisdiction to hear appeal (1) from final judgments, orders, and decrees . . . of bankruptcy judges. . . ."

### II. *Issue on appeal*

Whether the bankruptcy court erred in determining that the 1984 federal income tax liability of debtor/appellee Elizabeth Binkley was dischargeable in her Chapter 7 bankruptcy case.

### III. *Standard of appellate review*

The District Court sits as an appellate court in an appeal of a bankruptcy court decision. *In re Williamson*, 15 F.3d 1037, 1038 (11th Cir.1994). Sitting in its appellate capacity, the Court makes no independent factual findings. *Id.* It applies the clearly erroneous standard of review to the bankruptcy court's findings of fact. *Id.* With respect to the bankruptcy court's conclusions of law, however, the

Court applies a de novo standard of review. *Id.*

## IV. *Facts*

Floyd and Elizabeth Binkley filed a petition for relief under Chapter 7 of the Bankruptcy Code on September 18, 1992. On December 16, 1992, the Binkleys filed an adversary proceeding seeking a determination that their federal tax liabilities for the years 1979 through 1989 were dischargeable. A bench trial was held before the Honorable Jerry A. Funk on June 21, 1994. Thereafter, the bankruptcy court entered its Findings of Fact and Conclusions of Law, a portion of which are reproduced as follows:

The Plaintiffs in this case are a husband and wife who were married in 1980. The testimony at trial was that for the period of ten years prior to their bankruptcy filing, they were consistently late in filing tax returns for each of those years. In fact, returns for some years were not filed at all, until the plaintiffs were contacted by the Internal Revenue Service and forced to file their returns. There are tax debts that are owed for a majority of those ten years.

According to testimony at the trial, the Plaintiffs filed their federal income tax returns for the years 1979 through 1986 only after the Internal Revenue Service contacted the Plaintiffs and informed them that they must file their returns. On at least two occasions, in 1984 and in 1987, the Internal Revenue Service contacted the Plaintiffs and required them to file three delinquent returns for each of the preceding years. In 1984, the Plaintiffs were called into the office of the Internal Revenue Service and required to file their returns for 1981, 1982, and 1983. In 1987, the Plaintiffs were called into the office of the Internal Revenue Service and required to file their returns for 1984, 1985, and 1986.

Mr. Binkley testified that he was aware throughout the relevant period that the federal income tax returns were required to be filed, and that he was liable to the United States for income taxes. He testified that he deliberately failed to file the federal income tax returns for the years 1979 through 1986 in a timely manner because he was afraid of the Internal Revenue Service, and believed that he would be able "to catch up" the tax delinquencies and did not intend to avoid the payment of his taxes.

\* \* \* \* \* \*

Mrs. Binkley testified that she relied entirely on her husband to prepare and file their joint federal income tax returns. She did testify that she discussed the non-filing of tax returns with her husband, but relied on him to file and pay the taxes. She also testified that she was unaware that she had an option of filing separate federal income tax returns. During the relevant period of time, Mrs. Binkley was employed from time to time in various jobs. Her employers always withheld income taxes from her wages.

From 1979 through 1984, Mr. Binkley's sole occupation was as a framing construction contractor. This entailed obtaining jobs from general contractors to construct the wooden frames of buildings. Mr. Binkley would hire other individuals to assist him in the construction. Upon completion, the general contractor would pay Mr. Binkley with a check for his work. Mr. Binkley would go to the general contractor's bank, cash the check, and pay his helpers in cash, retaining the remaining cash for his family's personal use.

Mr. Binkley did not maintain a business bank account. He conducted his business by cash transactions, including the cash purchase of equipment and supplies, in addition to the cash payments to assistants. He testified that he maintained "very poor records" of his business transactions. Nevertheless, Mr. Binkley claimed deductions for his busi-

ness expenses on his federal income tax returns for the years at issue.

\*　　\*　　\*　　\*　　\*　　\*

The cumulative implication of Mr. Binkley's testimony was that for any year that he was responsible for paying his own taxes, they were not paid; the only years for which his federal income taxes were fully paid, 1987 and 1988, were those in which taxes were withheld from his earnings by an employer. He testified that he did not earn substantially more in 1987 and 1988 than he had in other years, and that he had managed nonetheless to maintain his household, even after the taxes were withheld from his paycheck.

There are several years in which the Binkleys' returns contained irregularities. On their 1982 federal income tax return the Plaintiffs deducted the full cost of a piece of business equipment, an air compressor and nail gun, in the amount of $1,140.00, although Mr. Binkley testified that in retrospect he knew the item should have been depreciated.

There are also several irregularities on the Plaintiffs' 1984 income tax return. On their 1981 and 1982 income tax returns, the Plaintiffs reported self-employment taxes on the income earned through Mr. Binkley's framing business. Although he did the same work in 1984, they did not report self-employment taxes on their return for 1984. Although the Plaintiffs properly included a Schedule C [Profit (or Loss) from Business or Profession] with their 1981 and 1982 federal income tax returns, they did not do so with their 1984 return. Deductions for Mr. Binkley's business costs for 1984 were reported as "employee business expenses" in the amount of $41,015. Mr. Binkley testified that these expenses were solely for payments made to assistants in the contracting business, for which Mr. Binkley admitted his records were poorly kept.

Additionally, the Plaintiffs failed to report Mrs. Binkley's income on the 1984 return for that year. Mr. Binkley testified that this omission was made because of the upheaval that was caused by the death of his father and his attempt to change his line of work during that time. He further testified that he probably lost his wife's W–2 for 1984. Also on the 1984 return, the Plaintiffs claimed a deduction for transportation and lodging with respect to medical and dental expenses in the amount of $2,941. Mr. Binkley testified that there were no extraordinary medical expenses incurred by his family that year, but instead the deduction represented car and truck expenses associated with his framing business.

Findings of Fact and Conclusions of Law, Bankruptcy Court Dkt. 22 at 2–6.

On October 3, 1994, the bankruptcy court entered a judgment which, in relevant part, found that the tax liabilities owed by Elizabeth Binkley for the years 1980 through 1986 were dischargeable. The Government filed a Motion to Alter or Amend Judgment and for Reconsideration. On December 6, 1994, the bankruptcy judge held a hearing on the motion and specifically "clarified" his reasons for finding that Elizabeth Binkley's 1984 income tax liabilities were dischargeable by stating:

> The Court has no intent to modify that portion of the judgment. My findings at the time were that Mrs. Binkley did not owe any tax until such time as she actually signed that tax return. Her taxes had been taken out of her wages, and therefore she could have filed a separate return and been away from this thing.
>
> Based on the evidence presented, the Government failed to show that she had any involvement in this business or had any knowledge whatsoever of the matters that were contained in the tax return.
>
> Therefore, as to her, in addition to finding that she didn't avoid or evade income tax, it was in my mind—and

maybe I didn't put it in the order specifically, but it was that the return was not fraudulent as to Mrs. Binkley.

It was fraudulent as to him. He is the one. It was clear that he ran the show, that he put down the information. He ran his business. He didn't have the adequate records. He gave the information to prepare. It was a late-filed return. She merely signed it.

I'm not saying that there is or is not an argument in the spouse defense under § 523, but in this court, there is no law cited that says that I can't apply equitable principal (sic) to her. And therefore, based on that, the return was not fraudulent as to Mrs. Binkley, although it was fraudulent as to Mr. Binkley. And, of course, it was not nondischargeable as to Mr. Binkley.

So the Court stands on its ruling on that. I'm just clarifying or expanding my finding to support that.

Transcript of December 6, 1994, Proceeding, Bankruptcy Court Dkt. 30 at 4-6.

The bankruptcy court entered an Amended Judgment on January 13, 1995, which, in relevant part provided:

1. The tax liabilities owed by Elizabeth Binkley for the years 1980 through 1986 are dischargeable pursuant to the Court's oral ruling at the trial held June 21, 1994, and the Court's oral ruling at the post-trial hearing held on December 6, 1994.

Amended Judgment, Bankruptcy Court Dkt. 32. Thereafter, the Government filed this appeal from the Amended Judgment.

**V. *Government's position***

The Government asserts that Elizabeth Binkley's 1984 tax liability is nondischargeable because the Binkleys' joint 1984 tax return was a fraudulent return. The Government claims that in reaching its decision, the bankruptcy court ignored the disjunctive character of § 523(a)(1)(C) of the Bankruptcy Code. According to the Government, that section provides that "[i]f the return that a debtor makes is fraudulent, whether or not the debtor is personally responsible for the fraud, the tax liability relating to that return is nondischargeable." Government's Brief (Dkt. 5 at 5). Moreover, the Government contends that § 523(a)(1)(C) does not contain an "innocent spouse" exception such as that contained in § 6013(e) of the Internal Revenue Code. The Government expressly concedes that it does not dispute that Mrs. Binkley did not willfully attempt to evade or defeat her 1984 taxes or that it was Mr. Binkley's errors, omissions, and intent that made the 1984 joint return fraudulent.

**VI. *Binkleys' response***

The Binkleys respond that the bankruptcy court properly determined that Mrs. Binkley's 1984 federal income tax liability is dischargeable because there is no evidence from which it could be inferred that she "intentionally or willfully, by means of an intentional, voluntary violation of a known duty, delivered or disclosed a tax return known by her to be fraudulent or false as to any material matter." Binkleys' Brief (Dkt. 7 at 3-4). In fact, the Binkleys point out that the Government concedes in its brief that it was the actions of Mr. Binkley—and not those of Mrs. Binkley—that made the 1984 joint return a fraudulent one.

**VII. *Discussion***

█ Pre-confirmation debts are generally discharged in Chapter 7 proceedings. *See* 11 U.S.C. § 727(b). Pursuant to § 523(a)(1)(C), however, an express exception to discharge under § 727 exists for federal income tax debts

> with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

11 U.S.C. § 523(a)(1)(C). Exceptions to discharge are to be construed narrowly in favor of the debtor. *In re Howard,* 167 B.R. 684, 686 (Bkrtcy.M.D.Fla.1994).

■ As the party asserting that Mrs. Binkley's 1984 tax debt is nondischargeable, the Government has the burden of proving that Mrs. Binkley made a fraudulent return. *See In re Kirk*, 98 B.R. 51, 54 (Bkrtcy.M.D.Fla.1989). The standard of proof required to prove fraud is clear and convincing evidence. *Id.* at 55. To prevail on the ground that Mrs. Binkley made a fraudulent return, the Government must show: (1) Mrs. Binkley's knowledge of the falsehood of the return, (2) Mrs. Binkley's intent to evade the taxes, and (3) an underpayment of the tax. *See In re Riley*, 202 B.R. 169, 174 (Bkrtcy.M.D.Fla.1996). The existence of fraud is a question of fact. *See id.* Because direct evidence of fraud is rarely available, the Court looks to the totality of the circumstances. *See Korecky v. Commissioner*, 781 F.2d 1566, 1568 (11th Cir.1986). Among the factors indicating the existence of fraud are: whether the debtor significantly understated his income, failed to file tax returns, filed returns late, failed to keep adequate records of income, and failed to cooperate with the IRS. *See In re Carapella* 105 B.R. 86, 89–90 (Bkrtcy.M.D.Fla.1989).

■ Contrary to the Government's assertion that "[i]f the return that a debtor makes is fraudulent, whether or not the debtor is personally responsible for the fraud, the tax liability relating to that return is nondischargeable," persuasive case law suggests otherwise. The Court agrees with those courts that have found that a fraudulent return does not preclude dischargeability as to a spouse who is not shown to have been guilty of complicity or otherwise personally involved in the fraud. In *In re Riley*, 202 B.R. 169 (Bkrtcy. M.D.Fla.1996), the Internal Revenue Service ("IRS") made essentially the same argument that the Government makes in this case, i.e., a debtor who files/makes a fraudulent return cannot discharge the tax liability for that return even if he had no knowledge that the return was fraudulent.

In rejecting the IRS's argument in *Riley*, the bankruptcy court stated:

> With respect to Mrs. Riley, the IRS asserts that she filed fraudulent returns, and whether or not she knew they were fraudulent is not relevant.[10]

> The Court has evaluated the testimony and the record. With respect to [Mr.] Riley, the Court does not believe that the IRS has overcome the burden of proof which it imposed upon it to establish that [Mr.] Riley filed fraudulent returns. With respect to Mrs. Riley, the IRS does not cite any cases in support of its legal argument, and all cases reviewed by the Court are consistent in their holdings that a debtor must have known a return was fraudulent before the debt is excepted from discharge.

202 B.R. at 176.

Likewise, in *In re Kirk*, 98 B.R. 51 (Bkrtcy.M.D.Fla.1989), the bankruptcy court found that the fraudulent activity of the debtor's spouse could not be imputed to the debtor but rather the IRS was required to prove actual, intentional wrongdoing by the debtor in order for the tax liability associated with a fraudulent return to be nondischargeable as to the debtor. The bankruptcy court in *Kirk* stated:

> Here the IRS argues the tax debt is nondischargeable pursuant to Section 523(a)(7)(A) based upon the filing of a fraudulent return by the Debtor. As fraud is the issue, the Court is guided by Section 6653(b) of the Internal Revenue Code which addresses the issue of civil fraud. Section 6653(b)(3) provides that a spouse is not liable for the civil fraud penalty when a joint return is filed unless some part of the underpayment is due to the fraud of that spouse. 26 U.S.C. § 6653(b)(3). As such there is no presumption of correctness of the fraud penalty. *Goldberg v. C.I.R.*, 239 F.2d 316, 320 (5th Cir.1956). The fraudulent

---

**10.** The IRS argues that § 523(a)(1)(C) does not require a debtor to knowingly file a fraudulent return. The IRS claims that it needs to prove only that a fraudulent return was filed.

activity of the Debtor's spouse cannot be imputed to her, *Toussaint v. C.I.R.,* 743 F.2d 309, 312 (5th Cir.1984), despite his concession of the fraud, *Sullivan, supra.* Consequently, the IRS must prove an actual, intentional wrongdoing by the Debtor....

98 B.R. at 54.

 The Court has reviewed the record in the case and finds that there is sufficient record evidence to support the bankruptcy judge's determination that Mrs. Binkley had no knowledge that the 1984 joint return was false and that she had no intent to evade or defeat the payment of her taxes. Moreover, the record supports the bankruptcy court's finding that the fraudulent return was attributable solely to Mr. Binkley as he was the one who failed to keep income records, knew the return contained false information, and intentionally sought to evade or defeat the payment of his taxes. Thus, the Court finds that the Government has failed to show that the bankruptcy court's decision that Mrs. Binkley's tax liabilities were dischargeable was clearly erroneous.

Accordingly, it is hereby **ORDERED:**

1. The Amended Judgment entered by the Bankruptcy Code on January 13, 1995, is **affirmed.**

2. The Clerk is **directed** to enter judgment for the appellees and to close this case.